ORIGINAL

19 MAG 3899

Approved: _____
          Dominic A. Gentile
          Assistant United States Attorney

Before:   HONORABLE SARAH NETBURN
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA          :     **COMPLAINT**
                                  :
          - v. -                  :     Violations of
                                  :     18 U.S.C §§ 922(g)(1),
JOHANSI LOPEZ,                    :     1951, 924(C), and 2; and
  a/k/a "Gordo,"                  :     21 U.S.C. § 846
ANGEL CRISPIN,                    :
  a/k/a "Secreto,"                :
ANTONIO BATISTA,                  :
  a/k/a "Anthony,"                :
KEVIN BRITO,                      :     
  a/k/a "Derrick,"                :
WANDY DOMINGUEZ,                  :
  a/k/a "Noel,"                   :
AMAURYS HERNANDEZ,                :
  a/k/a "Flaco,"                  :
JERVIS CIRINO,                    :
  a/k/a "Nano,"                   :
                                  :
          Defendants.             :
                                  :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        JOSE SANDOBAL, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA") and charges as follows:

## COUNT ONE
(Conspiracy to Commit Hobbs Act Robbery)

        1.    From at least on or about April 10, 2019, up to and including at least on or about April 18, 2019, in the Southern District of New York and elsewhere, JOHANSI LOPEZ, a/k/a "Gordo," ANGEL CRISPIN, a/k/a "Secreto," ANTONIO BATISTA, a/k/a "Anthony," KEVIN BRITO, a/k/a "Derrick," WANDY DOMINGUEZ, a/k/a "NOEL,"

AMAURYS HERNANDEZ, a/k/a "FLACO," and JERVIS CIRINO, a/k/a "Nano," the defendants, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with others known and unknown to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, LOPEZ, CRISPIN, BATISTA, BRITO, DOMINGIEZ, HERNANDEZ, and CIRINO, agreed to rob an individual they believed was a narcotics dealer in New York, New York, using firearms.

(Title 18, United States Code, Section 1951.)

COUNT TWO
(Conspiracy to Possess with Intent to Distribute Narcotics)

2.      From at least on or about April 10, 2019, up to and including at least on or about April 18, 2019, in the Southern District of New York and elsewhere, JOHANSI LOPEZ, a/k/a "Gordo," ANGEL CRISPIN, a/k/a "Secreto," ANTONIO BATISTA, a/k/a "Anthony," KEVIN BRITO, a/k/a "Derrick," WANDY DOMINGUEZ, a/k/a "NOEL," AMAURYS HERNANDEZ, a/k/a "FLACO," and JERVIS CIRINO, a/k/a "Nano," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

3.      It was a part and an object of the conspiracy that JOHANSI LOPEZ, a/k/a "Gordo," ANGEL CRISPIN, a/k/a "Secreto," ANTONIO BATISTA, a/k/a "Anthony," KEVIN BRITO, a/k/a "Derrick," WANDY DOMINGUEZ, a/k/a "NOEL," AMAURYS HERNANDEZ, a/k/a "FLACO," and JERVIS CIRINO, a/k/a "Nano," the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

2

4.     The controlled substances that JOHANSI LOPEZ, a/k/a "Gordo," ANGEL CRISPIN, a/k/a "Secreto," ANTONIO BATISTA, a/k/a "Anthony," KEVIN BRITO, a/k/a "Derrick," WANDY DOMINGUEZ, a/k/a "NOEL," AMAURYS HERNANDEZ, a/k/a "FLACO," and JERVIS CIRINO, a/k/a "Nano," the defendants, conspired to distribute and possess with intent to distribute were (i) 1 kilogram and more of mixtures and substances containing a detectable amount of heroin in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) 5 kilograms and more of mixtures, and substances containing a detectable amount of cocaine in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

## COUNT THREE
(Use of a Firearm)

5.     On or about February 12, 2019, in the Southern District of New York and elsewhere, JOHANSI LOPEZ, a/k/a "Gordo," ANGEL CRISPIN, a/k/a "Secreto," ANTONIO BATISTA, a/k/a "Anthony," KEVIN BRITO, a/k/a "Derrick," WANDY DOMINGUEZ, a/k/a "NOEL," AMAURYS HERNANDEZ, a/k/a "FLACO," and JERVIS CIRINO, a/k/a "Nano," the defendants, during and in relation to a crime of violence and a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the attempted robbery charged in Count One and Count Two of this Complaint and the drug trafficking conspiracy charged in Count Three of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crimes, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), and 2.)

## COUNT FOUR
(Possession of a Firearm by a Convicted Felon)

6.     On or about February 12, 2019, in the Southern District of New York and elsewhere, AMAURYS HERNANDEZ, a/k/a "FLACO," the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, willfully and knowingly, did possess in and affecting commerce, a firearm, to wit, HERNANDEZ possessed a firearm which previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(g)(1).)

3

The bases for my knowledge and for the foregoing charge are, in part, as follows:

7. I am a Task Force Officer with the DEA and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, and my conversations with law enforcement agents and witnesses as well as a review of documents and recordings. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

8. Based on my review of documents, my conversations with law enforcement officers, my review of recordings made over the course of this investigation, as well as my own personal involvement in this investigation, I have learned, among other things, the following:

a. Since January 2019, two confidential sources working for the DEA ("CS-1"[1] and "CS-2"[2]) have been providing the DEA with information about a group of individuals who specialize in armed robberies of known narcotics traffickers.

b. On February 27, 2019, CS-1 met JOHANSI LOPEZ, a/k/a "Gordo," the defendant. During the meeting, which was recorded, LOPEZ told CS-1, in substance and in part, that he was a member of a group of individuals who targeted drug dealers for robbery of both drugs and money (the "Robbery Crew"). At the direction of law enforcement, CS-1 told LOPEZ that CS-1 knew of someone who was a member of a drug trafficking organization ("DTO") – i.e., CS-2 – that delivered large quantities of cocaine and heroin throughout the New York City area. CS-1 told LOPEZ

---

[1] CS-1 has been working for the DEA since 2014 as a paid informant. The information provided by CS-1 to law enforcement has proven reliable and resulted in seizures of kilogram quantities of heroin and cocaine and the arrest and conviction of several individuals.

[2] CS-2 was charged with narcotics offenses in 2019 and has been cooperating with law enforcement in order to obtain leniency at sentencing. The information provided by CS-2 to law enforcement has proven reliable and resulted in the seizure of one kilogram of heroin, two semi-automatic weapons, and the arrest of one individual.

4

that CS-1 would be able to provide LOPEZ and the Robbery Crew with information about the DTO's next delivery. LOPEZ stated, in substance and in part, that he was interested in robbing the DTO's next delivery and that he would introduce CS-1 to the rest of the Robbery Crew.

9.     Based on my review of documents, my conversations with law enforcement officers, my review of recordings made over the course of this investigation, as well as my own personal involvement in this investigation, I have learned that on or about April 10, 2019, the following occurred, in substance and in part:

a.     CS-1 met with JOHANSI LOPEZ, a/k/a "Gordo," the defendant, in CS-1's vehicle at a location in the Bronx. During the meeting, which was recorded, CS-1 told LOPEZ that the DTO had just completed a delivery of narcotics in the area of West 155th Street and Edgecombe Avenue in Manhattan (the "April 10th Delivery"). CS-1 informed LOPEZ that the person providing CS-1 with the information was one of the people involved in the delivery – i.e., CS-2 – that CS-2 would provide CS-1 with the date and time of the next shipment, which would also consist of 15 kilograms of cocaine and 10 kilograms of heroin (the "Target Shipment"). The Target Shipment would be secreted in a hidden compartment in the vehicle CS-2 and other DTO members would be riding in.

b.     CS-1 then drove LOPEZ to another location in the Bronx where LOPEZ told CS-1 that they would meet with ANTONIO BATISTA, a/k/a "Anthony," the defendant. During the drive, LOPEZ told CS-1, in substance and in part, that BATISTA was a member of the Robbery Crew that BATISTA was a very dangerous individual who would likely kill one or all of the robbery targets if any of them resisted.

c.     After CS-1 and LOPEZ picked-up BATISTA, the three men drove to a location in Manhattan where LOPEZ told CS-1 that other members of the Robbery Crew would be waiting. During the drive, CS-1 discussed the April 10 Delivery. BATISTA told CS-1 and LOPEZ that he had access to firearms and a bullet proof vest and that he planned on using both during the robbery of the next shipment. BATISTA said that the Robbery Crew had to be armed with at least one or two firearms because, if the people they were planning to rob were armed, he would have to shoot the targets before they could act. BATISTA described how he conducted similar robberies of drug dealers in the past.

d.     CS-1, LOPEZ, and BATISTA met with ANGEL CRISPIN, a/k/a "Secreto, KEVIN BRITO, a/k/a "Derrick," and WANDY

5

DOMINGUEZ, a/k/a "NOEL", the defendants, at a location in Manhattan. During the meeting, which was recorded, LOPEZ informed CRISPIN, BRITO and DOMINGUEZ about the missed April 10 Delivery. LOPEZ instructed CS-1 to inform the entire group about the the Target Delivery. DOMINGUEZ then addressed the group and instructed them, in substance and in part, to:

  i.     Use a garage where the robbery team could
         bring the car transporting the drugs so that
         they could work on finding and accessing the'
         concealed compartment.

  ii.    Discard any bags used to contain the drugs
         because of the possibility of the presence of
         a GPS device.

  iii.   Arrive at te robbery scene early to look for
         any potential problems with law enforcement.

  iv.    Bring firearms to the robbery.

  v.     Use CS-2's phone to track CS-2's and the
         delivery vehicle's whereabouts on the day of
         the robbery.

  vi.    Conduct surveillance of the robbery location.

CRISPIN then asked CS-1 whether any of the individuals transporting the drugs would be armed. CRISPIN said in substance and in part, that he would shoot the targets if any of them resisted. CRISPIN told the group that he would take responsibility for getting a car to use in the robbery and LOPEZ volunteered to find license plates that could be used on the car. BRITO told the group that the proceeds of the robbery should be divided equally among the group.

      10.   Based on my review of documents, my conversations with law enforcement officers, my review of recordings made over the course of this investigation, as well as my own personal involvement in this investigation, I have learned, among other things, the following:

      a.   On April 12, 2019, CS-1 met with JOHANSI LOPEZ, a/k/a "Gordo," ANTONIO BATISTA, a/k/a "Anthony," KEVIN BRITO, a/k/a "Derrick," and WANDY DOMINGUEZ, a/k/a "Noel," the defendants, at a location in Manhattan. CS-1 told the group that he had spoken with CS-2 and that CS-2 informed him that CS-2 would be delivering another shipment of narcotics to the location near

6

West 155th Street and Edgecombe Avenue in Manhattan in the next week, and that the shipment would consist of 15 kilograms of cocaine and 10 kilograms of heroin. During a follow-up conversation between CS-1 and LOPEZ, LOPEZ told CS-1 that the robbery team wanted to meet CS-2 before moving ahead with the robbery.

11. Based on my review of documents, my conversations with law enforcement officers, my review of recordings made over the course of this investigation, as well as my own personal involvement in this investigation, I have learned, among other things, the following:

a. On April 14, 2019, CS-1 met with ANGEL CRISPIN, a/k/a "Secreto," the defendant, in CS-1's car at a location in the Bronx. CRISPIN told CS-1 that he has experience committing these types of robberies and knows what to do if the victims resist. CRISPIN told CS-1 that he would beat the victims into submission if necessary. CRISPIN contacted ANTONIO BATISTA, a/k/a "Anthony," the defendant, via Facetime and discussed with BATISTA and CS-1 how to conduct the robbery. CRISPIN told CS-1 and BATISTA that he would obtain a gun from a friend of his to use during the robbery and BATISTA volunteered to obtain guns from "Flaco." Both BATISTA and CRISPIN agreed that the use of at least two guns was required for this robbery.

12. Based on my review of documents, my conversations with law enforcement officers, my conversations with witnesses, as well as my own personal involvement in this investigation, I have learned, among other things, the following:

a. On April 16, 2019, CS-1 and CS-2 met with ANGEL CRISPIN, a/k/a "Secreto," the defendant, inside of CS-1's car at a location in the Bronx. On the way to another location in the Bronx, CRISPIN asked CS-2 if CS-2 knew whether the other occupants of the delivery car would be armed to which CS-2 replied that they would. CRISPIN then made a phone call to an unknown male and tells the unknown male that he will be by later to pick-up a gun.

b. CS-1, CS-2, and CRISPIN drove to another location in the Bronx to meet with JOHANSI LOPEZ, a/k/a "Gordo," ANGEL CRISPIN, a/k/a "Secreto," ANTONIO BATISTA, a/k/a "Anthony," KEVIN BRITO, a/k/a "Derrick," WANDY DOMINGUEZ, a/k/a "NOEL," and AMAURYS HERNANDEZ, a/k/a "FLACO," the defendants. Upon arrival, LOPEZ took CS-2's cellphone and activated a location monitoring application so that he could track CS-2's location on the day of the robbery.

7

c.    During the meeting, HERNANDEZ told CS-2 that the group would meet up at a hotel after the robbery to spilt the proceeds of the robbery equally. HERNANDEZ explained that he did not want to have any members of the robbery team complaining about not getting their share. HERNANDEZ told CS-2 that he had participated in a number of similar robberies and that it was important that everyone knew what their roles were so no mistakes were made.

d.    DOMINGUEZ brought CS-2 into his car and told CS-2 that he was the leader of the robbery team and that he wanted to make sure that he could track CS-2's whereabouts on the day of the robbery. DOMINGUEZ took CS-2's cellphone and synced his phone with the location monitoring application previously installed on CS-2's phone by LOPEZ, so that DOMINGUEZ could monitor CS-2's location as well.

13.    Based on my review of documents, my conversations with law enforcement officers, my review of recordings made over the course of this investigation, as well as ·my own personal involvement in this investigation, I have learned, among other things, the following:

a.    On April 18, 2019, CS-1 met with JOHANSI LOPEZ, a/k/a "Gordo," ANGEL CRISPIN, a/k/a "Secreto," ANTONIO BATISTA, a/k/a "Anthony," KEVIN BRITO, a/k/a "Derrick," WANDY DOMINGUEZ, a/k/a "NOEL," AMAURYS HERNANDEZ, a/k/a "FLACO," and JERVIS CIRINO, a/k/a "Nano," the defendants, at a location in Manhattan. During the meeting, CS-2 called CS-1 and asked to speak with LOPEZ. CS-2 informed LOPEZ that CS-2 was on the move at which point DOMINGUEZ and LOPEZ began monitoring the tracking application on their phones for CS-2's whereabouts.

b.    At the meeting, DOMINGUEZ gave instructions to the members of the robbery team and assigned specific tasks to each member. DOMINGUEZ instructed CIRINO, in substance and in part, to stay in his car and use it to block any escape routes that the delivery car may try to use. DOMINGUEZ told HERNANDEZ to go pick-up the guns. HERNANDEZ and CIRINO drove away and returned a short while later at which point CS-1 entered CIRINO's vehicle. CS-1 observed a plastic bag in the front console area of the car and asked CIRINO, in substance and in part, whether the bag contained the guns. CIRINO responded that it did at which point CS-1 looked inside the bag and observed two firearms inside.

c.    A short time later, LOPEZ told CS-1 to drive BATISTA to a location in the Bronx so BATISTA could pick-up a

bullet proof vest. CS-1 drove BATISTA to an apartment building in
the Bronx which BATISTA entered. BATISTA returned to the vehicle
carrying a bullet proof vest. When CS-1 and BATISTA returned to
the original meet location, BATISTA handed the vest to DOMINGUEZ
who put the vest on in preparation for the robbery. HERNANDEZ
walked over to CS-1's vehicle with the bag containing the two
firearms and gave one firearm to DOMINGUEZ who placed it in his
jacket pocket. HERNANDEZ kept the other gun which remained inside
the plastic bag. BRITO told CS-1 that he was going to bring the
kilograms of drugs BRITO expected to receive from the robbery to
Canada where he would get much more money for them. BRITO informed
CS-1 that additional people were going to participate in the
robbery to make sure that everything went according to plan, but
that any additional participants in the robbery would be paid from
BRITO's share.

    d. At approximately 8:00 p.m., CS-1, LOPEZ,
CRISPIN, BATISTA, BRITO, DOMINGUEZ, HERNANDEZ, and CIRINO traveled
to the area of West 155th Street and Edgecombe Avenue where the
robbery was to take place.

    e. At approximately, 8:15 p.m. I observed
CRISPIN, HERNANDEZ, LOPEZ, and DOMINGUEZ walking around the area
of West 155th Street and Edgecombe Avenue looking into parked
vehicles and engaged in what appeared to be surveillance of the
area.

    f. At approximately, 8:15 p.m., CS-1 observed
HERNANDEZ place the firearm he was carrying in the wheel well of
a parked car and DOMINGUEZ place the firearm he was carrying on
the ground in the area of where he was standing at the robbery
location.





g.    At approximately 8:25 p.m., agents placed
LOPEZ, CRISPIN, BATISTA, BRITO, DOMINGUEZ, HERNANDEZ, and CIRINO
under arrest. DOMINGUEZ was found wearing a bullet proof vest. The
firearm HERNANDEZ was carrying was found in the wheel well of a
parked car near where he was placed under arrest and the firearm

10

DOMINGUEZ was carrying was found on the ground near where he was arrested. One firearm is a Keltec .380 caliber pistol, and the other firearm is a KHR .40 caliber pistol, both manufactured outside of New York State.

14.   Based on a review of law enforcement databases, I have learned, that on or about February 3, 2014, AMAURYS HERNANDEZ, a/k/a "FLACO," the defendant, was convicted of burglary in the third degree in violation of New York Penal Law § 140.20, which is a crime punishable by more than one year imprisonment.

WHEREFORE, deponent respectfully requests that JOHANSI LOPEZ, a/k/a "Gordo," ANGEL CRISPIN, a/k/a "Secreto," ANTONIO BATISTA, a/k/a "Anthony," KEVIN BRITO, a/k/a "Derrick," WANDY DOMINGUEZ, a/k/a "NOEL," AMAURYS HERNANDEZ, a/k/a "FLACO," and JERVIS CIRINO, a/k/a "Nano," the defendants, be imprisoned or bailed, as the case may be.

JOSE SANDOBAL
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
19th day of April, 2019

HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

11